[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10941

_____

D. C. Docket No. 98-00920-CV-2-MEF-WC

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 5, 2008
THOMAS K. KAHN
CLERK

OSI, INC.,
A corporation,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,
MICHAEL W. WYNNE,
as Secretary of the Air Force,
ROBERT M. GATES,
Secretary of Defense,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(May 5, 2008)

Before BLACK and CARNES, Circuit Judges, and RESTANI[*], Judge.

BLACK, Circuit Judge:

_____

[*] Honorable Jane A. Restani, United States Court of International Trade Chief Judge, sitting by designation.

OSI, Inc. (OSI) appeals, for the second time, the grant of summary judgment in favor of the Government on OSI's claims relating to the Air Force's use of certain land–including, in part, land now owned by OSI–as a landfill during the 1960s, 1970s, and 1980s. OSI brought tort claims under the Federal Tort Claims Act (FTCA), claims of cost recovery under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), and a citizen suit under the Resource Conservation Recovery Act (RCRA). The district court granted summary judgment in favor of the Government on all claims. For the reasons stated below, we affirm.

## I. BACKGROUND

The background leading up to the first appeal in this case is adequately recounted at *OSI, Inc. v. United States*, 285 F.3d 947, 949-50 (11th Cir. 2002). We will briefly recap the relevant facts. During the 1960s and early 1970s, the Air Force leased land currently owned by OSI for use as a landfill. This land, called LF4, was part of a larger area of land that was adjacent to Maxwell AFB leased by the Air Force and used as landfills through the early 1990s. Many materials–including hazardous materials–were dumped on these sites.

In the late 1990s, the Air Force informed OSI of possible soil and groundwater contamination on LF4 from this era of dumping. The Air Force

launched an investigation of all of the areas subject to the landfill activities (a large area–which included LF4–known as OU-1) to determine whether the contamination would pose a risk to health or the environment. OSI sued the Government, alleging various tort claims relating to the activities on LF4, seeking cost recovery under CERCLA, and filing a citizen suit under RCRA.

The district court initially dismissed all the claims. This Court affirmed as regards the tort claims, finding the discretionary function exception in the FTCA prevented the court from exercising jurisdiction over the tort claims. *OSI*, 285 F.3d at 953. The Court then vacated and remanded the grant of summary judgment on the RCRA and CERCLA claims to allow the district court a chance to supplement the record and provide greater explanation for its decision. *Id.*

Subsequent to the remand, two developments of note took place. First, the Air Force released its final Summary of Remediation Selection, detailing its remedial scheme for the OU-1 area. This scheme looked at threats to a nearby aquifer and established remediation plans based on the possible impact each site within the OU-1 area might have on the aquifer. To ensure pathways to human exposure did not develop, the plan consisted largely of long-term monitoring of groundwater on OU-1, the construction of a fence, and the installation of certain

3

hydrogen-releasing compound barriers to reduce the concentration of some hazardous materials at select sites within OU-1.

Second, OSI learned landfill activities had taken place in the 1960s in areas outside of the technical boundaries of the LF4 leased area. OSI conceded the technical boundaries were never followed between the Air Force and the then-owners of LF4, the Thomasons. In their new tort claims, OSI contended the Thomasons and the Air Force agreed that a berm around three feet in height (roughly tracking the technical boundary of LF4) served to establish the actual boundary for landfill activities. Thus, hazardous materials discovered west of the berm were outside the boundary.

OSI claimed this was a new fact that changed the nature of its tort claims. OSI reasserted its original tort claims against the Government and added a claim for direct trespass. The Government again moved for summary judgment on the reasserted tort claims, the CERCLA cost recovery claims, and the RCRA citizen suit. The district court granted summary judgment on all claims. As to the tort claims, the district court found they were barred by the law of the case because the alleged new evidence relied on by OSI did not change the fact that all landfill activities took place with the Thomasons' permission. Thus, the court found the evidence remained substantially the same as the evidence before this Court in *OSI*,

and the law of the case controlled. On the CERCLA cost recovery claims, the district court found OSI did not have jurisdiction to seek cost recovery under precedents of the Supreme Court and this Court. As to the RCRA claim, the district court found it did have jurisdiction but granted summary judgment on the merits, finding no evidence by OSI to refute the absence of a genuine issue of material fact as to the existence of an imminent and substantial threat to health or the environment.

OSI appeals. Only the RCRA claim merits extended discussion.[1]

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, considering all evidence and reasonable inferences drawn therefrom in the light most favorable to the non-

---

[1] We decline to consider the tort claims, because the district court dismissed them and we affirmed its judgment doing so. The manner in which OSI attempted to reassert the claims is not proper. The appropriate avenue for reasserting those claims would have been to seek relief from judgment under Fed. R. Civ. P. 60(b)(2). Even if OSI had appropriately sought reinstatement of its tort claims against the Government, it is unlikely it would prevail. It knew dumping took place beyond the technical boundaries of the leased area and likely should have discovered the hazardous materials beyond the berm through reasonable diligence well before this Court affirmed the dismissal.

We also reject OSI's claims for cost recovery under CERCLA. OSI sought recovery of costs from the Government under 42 U.S.C. § 9607(a), which permits recovery of removal and remediation costs voluntarily incurred by parties like OSI. *See United States v. Atlantic Research Corp.*, – U.S. –, 127 S. Ct. 2331, 2335-37 (2007). OSI has not come forward with even a scintilla of evidence that they have incurred or plan to incur costs to clean up LF4. Therefore, the grant of summary judgment on the CERCLA claims is affirmed.

5

moving party. *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005). Legal conclusions are reviewed de novo. *Id.* at 1323.

## III. DISCUSSION

OSI argues the district court erred in failing to find it had raised sufficient evidence of an imminent and substantial harm so as to survive summary judgment on its RCRA claim. The Government contends the district court's judgment should be affirmed, on the grounds that the court lacked jurisdiction to hear the claim under 42 U.S.C. § 9613(h). According to the Government, because there is an ongoing CERCLA remedial action taking place, CERCLA bars challenges (including a RCRA citizen suit) to the ongoing cleanup. Because we agree with the Government, we do not reach the merits of the summary judgment question.

At the heart of this question of jurisdiction over RCRA citizen suits is the interpretation of certain CERCLA provisions and the proper source of authority for CERCLA cleanups on federal land. RCRA permits any person to commence a civil action against anyone who has contributed or is contributing to the handling, storage, or disposal of hazardous waste which "may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Remedial actions such as the one selected here by the Air Force, however, are authorized by CERCLA. CERCLA itself contains a jurisdictional

6

bar depriving federal courts of jurisdiction "to review any challenges to removal or remedial action selected under section 9604 of this title." *Id.* § 9613(h). Thus, if the Air Force's remedial action was selected under § 9604, then the district court lacked jurisdiction over the RCRA citizen suit until the cleanup action was complete. *See Alabama v. EPA*, 871 F.2d 1548, 1560 (11th Cir. 1989).

Before continuing with the analysis, we note two key premises driving our decision. First, the RCRA citizen suit is a "challenge" to a CERCLA remedial action because the relief sought by OSI–an injunction requiring removal of all contaminants from the site–would "interfere[] with the implementation of a CERCLA remedy." *Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1072 (11th Cir. 2002). Second, the "remedial action" selected by the Air Force here consists of, in part, long-term monitoring. Section 9613(h) bars challenges to ongoing remedial actions, and there is a question whether a "remedial action" consisting of nothing but long-term monitoring would be considered an ongoing remedial action–obvious difficulties would arise in determining when such monitoring would be "complete" so that the jurisdictional bar would no longer bar suit. In this case, however, OSI has not adequately created a genuine issue of material fact that the non-monitoring portion of the Air Force's remediation is

completed.  Therefore, we do not decide whether monitoring alone is ongoing remediation for § 9613 purposes.

With these assumptions in mind, we turn to the question whether the Air Force's remedial action on a federal facility was selected under § 9604.  That section states in broad terms that whenever a hazardous substance or other threatening substance is released into the environment, "the President is authorized to act . . . to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance . . . ."  42 U.S.C. § 9604(a)(1).  Section 9604 contains a clear power granted to the President to order removal or remedial actions to address the release of hazardous materials, and the plain terms of the statute would appear to suggest removal or remedial actions such as the Air Force's in this case are "selected under" § 9604.

But § 9620 is titled "Federal facilities" and purports to cover application of CERCLA to the Federal Government.  *See id.* § 9620.  It begins by noting the United States is subject to CERCLA "in the same manner and to the same extent . . . as any nongovernmental entity."  *Id.* § 9620(a)(1).  It then lays out a detailed set of procedures for dealing with hazardous waste spills on federal land.  First, each department must provide information on contamination of each facility owned or operated by the department.  *Id.* § 9620(b).  Second, the EPA

Administrator must establish a compliance docket containing, among other things, this information. *Id.* § 9620(c). Third, the Administrator must then conduct a "preliminary assessment," which determines whether the facilities in question will be placed on the National Priorities List (NPL). *Id.* § 9620(d)(1). Next, the scheme states "[n]ot later than 6 months *after the inclusion of any facility on the National Priorities List*, the department [in consultation with the Administrator] *shall* . . . commence a remedial investigation and feasibility study" which may lead to remedial action. *Id.* § 9620(e)(1), (2) (emphasis added). OSI argues remedial actions on federal facilities are "selected under" § 9620–not § 9604–and therefore are not subject to § 9613's jurisdictional bar because § 9620 is the exclusive source of authority for cleanups on federal lands.

While § 9620's discussion of federal facilities is extensive, we have searched the language of the section in vain for a general authorization for the federal government to engage in remedial actions on federal facilities. The only language approaching such a grant of authority is in § 9620(e), which, as stated above, says a department "shall" engage in remedial investigation and action, but only after the site has been included on the NPL. Section 9620 contains no language authorizing any remedial activity if the site is not listed on the NPL. It is undisputed that the OU-1 site has not been placed on the NPL. The only language

9

authorizing remedial actions on such sites is found in § 9604, the language of which is broad enough to be read as an authorization for all remedial actions, regardless of the land upon which the action takes place. Therefore, we hold the Air Force's remedial action for OU-1, a federal facility not listed on the NPL, was "selected under" § 9604 and is subject to the jurisdictional bar of § 9613(h). The district court lacked jurisdiction to hear OSI's RCRA citizen suit while the remediation is ongoing. *See Alabama v. EPA*, 871 F.2d at 1560.

Our view of § 9613(h) for federal facilities not listed on the NPL comports with the view of the Seventh Circuit. *Pollack v. U.S. Dep't of Defense*, 507 F.3d 522, 525-27 (7th Cir. 2007). The only other Circuit to address the jurisdictional bar for federal facilities and the source of authority for remedial actions is the Ninth Circuit in *Fort Ord Toxics Project, Inc. v. California EPA*, 189 F.3d 828 (9th Cir. 1999), which held challenges to federal site cleanups were not subject to § 9613(h)'s jurisdictional bar. As the court in *Pollack* noted, however, *Fort Ord* is distinguishable because there the federal facility was listed on the NPL. *Pollack*, 507 F.3d at 526.[2] Where a federal facility is not listed on the NPL, the only language authorizing remedial or removal actions is found in § 9604; such actions

___

[2] We do not have before us the question of whether a remedial action on a federal facility that *was* listed on the NPL would be "selected under" § 9620 and thus not subject to § 9613(h)'s jurisdictional bar, and nothing in this opinion should be read to decide the issue.

therefore are subject to the jurisdictional bar of § 9613(h) because the remediation is "selected under section 9604." 42 U.S.C. § 9613(h).

## IV. CONCLUSION

The district court lacked jurisdiction to hear OSI's RCRA citizen suit claim while the federal facility remedial action was ongoing. Because the remaining aspects of OSI's appeal are without merit, the district court's grant of summary judgment is

**AFFIRMED**.