[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12395
_____

D.C. Docket No. 1:13-cv-03827-TWT

CAROLE SOLLOWAY,

Plaintiff-Appellant,

versus

JAY CLAYTON,
as Chairman of the Securities and Exchange Commission,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 20, 2018)

Before NEWSOM and HULL, Circuit Judges, and ROYAL,[*] District Judge.

PER CURIAM:

_____

[*]Honorable C. Ashley Royal, United States District Judge for the Middle District of Georgia, sitting by designation.

Plaintiff/Appellant Carole Solloway sued her employer, Defendant/Appellee the Securities and Exchange Commission ("SEC"), under the Rehabilitation Act, 29 U.S.C. § 701, *et seq*., alleging disability discrimination and retaliation. The district court granted summary judgment for the SEC. Solloway appeals. After careful consideration, we **AFFIRM.**

## BACKGROUND

The district court recited at length the facts of this case in its order granting the SEC's motion for summary judgment; we only summarize the relevant background.

Carole Solloway is a staff accountant in the SEC's Atlanta Regional Office ("ARO") who suffers from post-traumatic stress disorder ("PTSD"), depression, and anxiety as a result of a brutal kidnapping and sexual assault in 1997. In 2011, Solloway learned the SEC had disciplined her immediate supervisor, ARO Employee, for watching pornography at work, which triggered her PTSD, anxiety, and depression.[1] Although ARO Employee stepped down from his supervisory position, he remained employed as a staff accountant at the ARO. Being in ARO Employee's presence, indeed even the thought of being in his presence, caused

---

[1] The parties identify Solloway's former supervisor as ARO Employee. ARO Employee was not involved in Solloway's 1997 kidnapping and sexual assault. Solloway learned of ARO Employee's misconduct by reading the SEC's Office of Inspector General's report of the incident.

Solloway to suffer from symptoms of her conditions such as diarrhea, uncontrollable shaking, inability to sleep, and inability to focus.

From 2011 to 2013, Solloway requested and received various forms of teleworking to accommodate her need to avoid ARO Employee and thus alleviate the symptoms of her PTSD. Shortly after her symptoms first manifested, Solloway sought and was granted a two-day a week recurring telework schedule as authorized under the collective bargaining agreement ("CBA") between the SEC and the National Treasury Employees Union, of which Solloway is a member.[2] A few months later, Solloway submitted a formal disability accommodation request to telework full-time and receive other assurances she could avoid ARO Employee, including advance notice of ARO Employee's schedule, the ability to decline any projects he worked on, and to be provided an alternative liaison when she would otherwise be required to contact ARO Employee.

While her request for accommodation was pending, the SEC moved Solloway's office further away from ARO Employee's office, allowed Solloway to telework five days of every two-week period, and required ARO Employee to telework the opposite five days. In December 2011, the SEC denied Solloway's specific request for full-time telework finding there was insufficient evidence to

---

[2] The CBA authorized employees to telework on a recurring basis for a maximum of two days a week and on a short-term ad hoc basis up to five days a week in exceptional circumstances.

3

establish Solloway was disabled, and, even assuming she was disabled, her requested accommodation posed an undue hardship on the SEC. However, the SEC allowed Solloway to continue teleworking two days a week and required ARO Employee to telework the opposite two days. On their overlapping day, the SEC allowed Solloway to avoid ARO Employee either by taking leave or using ad hoc telework when he was in the office. The SEC allowed this arrangement to continue for two years during which Solloway was able to avoid ARO Employee and successfully perform her job.

In April 2013, Solloway again requested an accommodation for full-time telework that would allow her to completely avoid ARO Employee and alleviate her fear she would encounter him at a required event. While this request was pending, the SEC allowed Solloway to telework full-time. In May, the SEC denied Solloway's second request as unduly burdensome and offered Solloway a non-competitive reassignment to an office in another city. Solloway rejected this offer. In September 2013, the SEC found Solloway was unable to perform the essential functions of her job, so it issued her a Notice of Proposed Removal and placed her on paid administrative leave with full benefits.

From September 2013, until March 2014, Solloway remained on paid administrative leave with full benefits. After the SEC announced a new CBA that permitted telework up to five days a week in July 2013, the SEC notified Solloway

of the change and offered her a full-time telework schedule in February 2014. In March 2014, Solloway resumed working in a full-time telework capacity.

Solloway filed suit claiming the SEC discriminated and retaliated against her in violation of the Rehabilitation Act by failing to reasonably accommodate her disability. The district court granted summary judgment for the SEC. Solloway appeals.

## DISCUSSION

We review a grant of summary judgment *de novo*, considering all evidence and reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *OSI, Inc. v. United States*, 525 F.3d 1294, 1297 (11th Cir. 2008). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## I. Failure to Accommodate Claim

"The Rehabilitation Act prohibits federal agencies from discriminating in employment against individuals with disabilities." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted). "The standard for determining liability

under the Rehabilitation Act is the same as that under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA"); thus, cases involving the ADA are precedent for those involving the Rehabilitation Act." *Id.*

To establish a *prima facie* claim for failure to accommodate, Solloway must show that (1) she is disabled; (2) she was a "qualified individual" at the relevant time, meaning she could perform the essential functions of the job in question with or without reasonable accommodations; and (3) she was discriminated against by way of the defendant's failure to provide a reasonable accommodation. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). An accommodation is reasonable if it enables the employee to perform the essential functions of the job. *Id.*

Here, the district court correctly held there was no discrimination. The SEC reasonably, and successfully, accommodated Solloway for two years. While her specific accommodation requests were pending, the SEC accommodated Solloway with either full-time or part-time telework. Although the SEC denied her specific request for full-time telework, it not only allowed her to continue teleworking part-time but also required ARO Employee to telework part-time on an alternate schedule so that she would not encounter him. Thus, contrary to Solloway's argument, the SEC did provide her with more than the recurring two-day a week

telework schedule authorized for all employees under the CBA—the SEC also changed ARO Employee's schedule to accommodate her.

Solloway successfully performed her job with this accommodation for two years, and no evidence reflects she encountered ARO Employee during this time. In 2013, when Solloway requested an additional accommodation for full-time telework to further alleviate her fear of encountering ARO Employee, she essentially sought a guarantee that she would never encounter ARO Employee. To require the SEC to be such guarantor is unreasonable.

Additionally, Solloway eventually received her preferred accommodation of full-time telework. Although the SEC placed Solloway on administrative leave for six months before she was allowed to permanently telework full-time, she neither lost her job nor stopped receiving her full pay and benefits. The SEC met its obligation under the Rehabilitation Act to provide Solloway with a reasonable accommodation. After all, "a qualified individual with a disability is not entitled to the accommodation of her choice, but only to a reasonable accommodation." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) (internal quotations and citation omitted).

## II. Retaliation Claim

The Rehabilitation Act incorporates the anti-retaliation provision from § 12203(a) of the ADA. 29 U.S.C. § 791(f). The ADA's anti-retaliation provision is

similar to Title VII's anti-retaliation provision, and the same analysis is used for both. *Stewart*, 117 F.3d at 1287. Therefore, we assess retaliation claims under the Rehabilitation Act using the same framework as Title VII retaliation claims. *Ellis*, 432 F.3d at 1326 ("The standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq*.").

To establish a *prima facie* case of retaliation, Solloway must show (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the adverse action and her protected expression. *Stewart*, 117 F.3d at 1287. Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. *Id*. If the employer meets its burden, "[t]he plaintiff must then demonstrate that it will be able to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation." *Id.*

The district court correctly found Solloway failed to create a triable issue of material fact as to retaliation. Solloway bases her retaliation claim on her failure to accommodate claim. Solloway argues the Notice of Proposed Removal was illegal retaliation directly caused by the SEC's discriminatory failure to accommodate her. However, as explained above, the SEC reasonably accommodated her. Thus,

8

Solloway's contention regarding retaliation "merely reclothes [her] ADA discrimination claim, which we have already rejected, and it fares no better in this garb." *Lucas*, 257 F.3d at 1261. *See also Stewart*, 117 F.3d at 1288 ("[T]he acts [plaintiff] describes relate directly to her 'reasonable accommodation' discrimination claim, not her retaliation claim, and accordingly provide no basis for denying summary judgment on this issue.").

Additionally, because Solloway failed to sufficiently brief the issues of causation and pretext in her initial brief, she waived these issues on appeal. "Parties must submit all issues on appeal in their initial briefs." *United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 2000) (citations omitted). "If an argument is not fully briefed (let alone not presented at all) to the Circuit Court, evaluating its merits would be improper both because the appellants may control the issues they raise on appeal, and because the appellee would have no opportunity to respond to it." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). "Indeed, evaluating an issue on the merits that has not been raised in the initial brief would undermine the very adversarial nature of our appellate system." *Id.* Therefore, we will not address Solloway's arguments on these issues, and we affirm the district court's decision.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

9