# In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2780

FIFTH THIRD BANK, by and through its
Trust Officer, as Special Administrator
of the ESTATE OF KACIE BECHARD, Deceased,
SHERYL M. BECHARD, and STEPHEN BECHARD,

*Plaintiffs-Appellants*,

*v.*

CSX CORPORATION, CSX TRANSPORTATION
CORPORATION, NEWTON COUNTY HIGHWAY
DEPARTMENT, NEWTON COUNTY, by and
through its Board of Commissioners,
and the NATIONAL RAILROAD PASSENGER
CORPORATION, also known as AMTRAK,

*Defendants-Appellees*.

———————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 02 C 9—**Allen Sharp**, *Judge.*

———————

ARGUED FEBRUARY 10, 2005—DECIDED JULY 22, 2005

———————

Before MANION, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* This case arises from a tragic
train-car collision that caused serious injuries to the driver
of the car and killed her three-and-one-half-year-old

daughter, a passenger. The daughter's estate and her mother and father brought a personal injury and wrongful-death action in Indiana state court, which the defendants—the owner of the railroad crossing, Newton County and its Highway Department, the railroad, and the State of Indiana and its Department of Transportation—removed to federal district court. The suit asserted that railroad warning devices at the crossing were inadequate, that the defendants negligently failed to remove vegetation that obstructed the ability to view oncoming trains, and also that Newton County negligently failed to maintain other signage at the crossing.

On the defendants' motions for summary judgment, the district court concluded that the case was controlled by *Norfolk Southern Railroad Co. v. Shanklin*, 529 U.S. 344 (2000); applying *Shanklin*, the court held that the plaintiffs' inadequate warnings claims were preempted by federal law. We agree. Under *Shanklin* and the facts of this case, the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §§ 20101 *et seq.*, preempts the plaintiffs' claims to the extent they are premised upon the alleged inadequacy of the warning devices at the crossing. The district court also held that the plaintiffs' negligence claim against Newton County for obstruction of view and failure to maintain signage was factually insufficient to survive summary judgment. We affirm that decision as well.

## I.  Background

At approximately 9:45 a.m. on January 13, 2000, an automobile operated by Sheryl Bechard was struck by a train operated by the National Passenger Railroad Association ("Amtrak"). The accident occurred on County Road ("CR") 400 East in Newton County, Indiana, at a rail crossing owned and maintained by CSX Transportation Corporation. Sheryl Bechard suffered serious injuries in the collision but

survived; her daughter Kacie, a passenger in the vehicle, died three days later from injuries sustained in the accident.

At the time of the accident, the CR 400 crossing was marked by advance warning signs and reflectorized crossbucks facing northbound and southbound traffic. Crossbucks are the familiar white boards marked with the words "RAILROAD CROSSING" in black letters assembled in a large "X" configuration. These warning devices were installed pursuant to a 1976 agreement between the State of Indiana and the Louisville & Nashville Railroad Company, a predecessor to CSX Transportation Corporation. The agreement enabled the disbursement of federal funds under the Federal Railway-Highway Crossings Program, 23 U.S.C. § 130, which helps the states pay for projects designed to eliminate hazards at railway-highway crossings. Under federal regulations, warning signs installed under the Crossings Program must conform to the latest edition of the *Manual on Uniform Traffic Control Devices for Streets and Highways* ("MUTCD"), supplemented to the extent applicable by state standards. *See* 23 C.F.R. § 646.214(b)(1) (2005). It is undisputed that 90% of the cost of the warning devices installed at the CR 400 crossing was paid for using federal funds.

Kacie's mother and father, as individuals, and Fifth Third Bank, as the administrator of Kacie's estate, filed suit in Indiana state court against CSX Corporation and CSX Transportation Corp. (jointly "CSX"), as well as Newton County and the Newton County Highway Department (jointly "the County"). The complaint was later amended to include Amtrak and the State of Indiana and the Indiana Department of Transportation. Amtrak removed the case to federal court pursuant to 28 U.S.C. § 1441, the general removal statute, and 28 U.S.C. § 1349, which confers federal jurisdiction over suits involving corporations when one-half of the capital stock in that corporation is owned by

the United States. *See Lynch v. Household Fin. Corp.*, 405 U.S. 538, 550 n.17 (1972). Attached to Amtrak's removal motion were consent letters from the other defendants. *See Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). The letter from the State of Indiana and the Indiana Department of Transportation was signed by an Indiana Assistant Attorney General. After the case was docketed in federal court, the plaintiffs moved to remand to state court on the ground that Indiana's consent to removal did not validly waive its Eleventh Amendment immunity to federal suit. The court denied the motion and the proceedings continued.

The plaintiffs' complaint, as amended, alleged four counts of negligence. In the first count the plaintiffs claimed that CSX negligently failed to install and maintain adequate warning devices at the CR 400 crossing and failed to remove obstructions from the right-of-way for which it was responsible. In the second count the plaintiffs alleged that the County negligently maintained the CR 400 crossing in an extrahazardous and unreasonably dangerous condition. The third count leveled the same allegation against Indiana and its Department of Transportation. In the fourth count the plaintiffs claimed that Amtrak negligently trained the crew and negligently operated the train involved in the accident. Each of the four counts sought damages for the injuries sustained by Kacie, Sheryl, and Stephen Bechard. The plaintiffs later stipulated to the dismissal of the State of Indiana and the Indiana Department of Transportation.

CSX and Amtrak moved jointly for summary judgment; the County filed a separate summary judgment motion. Applying *Shanklin*, the district court held that insofar as the plaintiffs' claims were premised upon the alleged inadequacy of the warning devices at the crossing, they were preempted by federal law. *Fifth Third Bank v. CSX Corp.*, 306 F. Supp. 2d 841, 848-52 (N.D. Ind. 2004). The court accordingly granted summary judgment to all defendants with respect to claims premised on the inadequacy of the

warning devices. As for the plaintiffs' negligence claim against the County for failure to remove vegetation obstructions from its right-of-way, the court held there was no factual basis in the record to conclude that but for an obstruction of view, Bechard would have seen the train and stopped. *Id.* at 846. The court also held there was no factual basis for the plaintiffs' claim that the County was negligent in failing to properly maintain its signage on the public road approach to the crossing. In the alternative, the court held that the County was entitled to immunity under the Indiana Tort Claims Act, IND. CODE § 34-13-3-3(7) (2005).

The district court denied summary judgment on the plaintiffs' obstruction-of-view claim against CSX and Amtrak, concluding that although the plaintiffs "had an extremely steep uphill climb" under Indiana statutory and case law on this remaining claim, summary judgment was inappropriate. As is relevant to this claim, the court declined to resolve a dispute between the parties over Sheryl Bechard's competence to testify due to head injuries suffered in the collision; the court concluded that until the competence question was resolved, disputed issues of fact precluded summary judgment on the obstruction-of-view claim against CSX and Amtrak.[1] The district court then issued an order pursuant to Rule 54(b), FED. R. CIV. P., and this appeal followed.

## II. Discussion

The plaintiffs raise four arguments on appeal. First, they contend that federal law does not preempt their inadequate

---

[1] The plaintiffs appear to have abandoned their claim against Amtrak for negligent training of railroad personnel and negligent operation of the train. The obstruction-of-view claim against CSX and Amtrak is referred to in a stipulation of the parties as the "sole remaining claim" in the case.

warnings claims, because the defendants failed to prove that the railroad warning signs at the crossing were properly installed, approved, adequate, and operating. Second, they argue that summary judgment was improperly granted on their claim against the County for obstruction of view and failure to maintain signage—including stop signs and pavement markings—because the district court rested its decision in part on Sheryl Bechard's testimony, even though it separately held that the unresolved competence issue precluded summary judgment on the obstruction-of-view claim against CSX and Amtrak. Third, the plaintiffs argue that the County is not entitled to immunity under the Indiana governmental immunity statute. Finally, the plaintiffs contend that this case should not have been in district court at all because Indiana's consent to removal did not validly waive its Eleventh Amendment immunity.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Federal preemption is an affirmative defense upon which the defendants bear the burden of proof. *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1377 (7th Cir. 1990). Our review of all the issues presented is de novo.

### A. Jurisdiction

The plaintiffs renew in this court their objection to federal jurisdiction, contending that Indiana did not waive its Eleventh Amendment immunity when it consented to removal. In their opening brief they relied on *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 467 (1945), which held that the Indiana Attorney General's appearance in and defense of a case did not waive the

state's immunity, because the statute under which the plaintiffs sued did not expressly indicate the state's consent to suit. However, the Supreme Court overruled *Ford* in relevant part three years ago:

> A rule of law that finds waiver through a state attorney general's invocation of federal-court jurisdiction avoids inconsistency and unfairness. A rule of federal law that, as in *Ford*, denies waiver despite the state attorney general's state-authorized litigating decision, does the opposite. For these reasons . . . we consequently over-rule *Ford* insofar as it would otherwise apply.

*Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 623 (2002). Under *Lapides*, the letter from the Indiana Assistant Attorney General consenting to removal of this case constitutes a waiver of Indiana's Eleventh Amendment immunity; the district court therefore properly declined to remand this case to state court. In their reply brief the plaintiffs suggest that *Lapides* should not apply retroactively; this argument is foreclosed by *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.").

## B. Federal Preemption

Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Derivative of this constitutional text is the doctrine of

preemption, which operates to prevent the enforcement of state laws that conflict with federal laws or regulations. The Supreme Court typically classifies preemption analysis into three categories. Preemption can occur when Congress declares its intention to preempt state regulation through a direct statement in the text of federal law (so-called "express preemption"). It can occur by implication in the "structure and purpose" of federal law showing a Congressional intent to preempt state law (so-called "implied preemption"). Finally, preemption can occur by an actual conflict between state and federal law, such as occurs when it is impossible for a private party to comply with both federal and state law requirements. *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). In all three types of preemption, "the ultimate touchstone" is congressional purpose. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)); *see also English*, 496 U.S. at 78-79 ("Pre-emption fundamentally is a question of congressional intent.").

The FRSA contains an express preemption provision:

> A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106. The Secretary of Transportation has promulgated regulations concerning the design of grade crossing improvements, including adequate warning devices. These regulations call for the installation of automatic gates with flashing light signals when certain enumerated conditions exist at a highway/rail crossing. 23 C.F.R. § 646.214(b)(3)(i). Where the specified conditions do not exist, the regulations provide that the type of warning

device to be installed is subject to the approval of the Federal Highway Administration ("FHWA"). 23 C.F.R. § 646.214(b)(4).

In *Shanklin*, the Supreme Court held that the FHWA's regulations addressing the adequacy of warning devices at rail crossings preempt state tort actions challenging the adequacy of devices installed using federal funds. *Shanklin*, 529 U.S. at 347. Relying on its earlier decision in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 670 (1993), the Court held that 23 C.F.R. § 646.214(b)(3) and (4) preempt state tort law when those regulations are found to be applicable to a particular crossing. Since the regulations are mandatory for all warning devices installed with federal funds, *Shanklin*, 529 U.S. at 353, the Court held they establish a standard of adequacy that " 'determine[s] the devices to be installed' when federal funds participate in the crossing improvement project." *Id.* at 354 (quoting *Easterwood*, 507 U.S. at 671). Therefore, the Court held, "[O]nce the FHWA has funded the crossing improvement and the warning devices are actually installed and operating, the regulation 'displace[s] state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained.' " *Id.* (quoting *Easterwood*, 507 U.S. at 670).

The *Shanklin* court made clear that whether the devices installed under a federally funded crossing improvement project actually meet the standards set forth in § 646.214(b)(3) and (4) is immaterial to the preemption analysis:

> It is this displacement of state law concerning the devices' adequacy, and not the State's or the FHWA's adherence to the standard set out in [the regulations] or to the requirements of the MUTCD, that pre-empts state tort actions. Whether the State should have originally installed different or additional devices, or

> whether conditions at the crossing have since changed such that automatic gates and flashing lights would be appropriate, is immaterial to the pre-emption question.

*Id.* at 357-58. Furthermore, the Court held that federal preemption attaches even if the warning devices were installed without any prior individualized assessment of the crossing at issue in a given case. *Id.* at 357-58 (abrogating *Shots v. CSX Transp., Inc.*, 38 F.3d 304, 307-08 (7th Cir. 1994)).

Thus, under *Shanklin*, preemption in this context operates to preclude any state law claim premised upon any alleged inadequacies in railway crossing warning devices, and the district court properly dismissed the plaintiffs' claims in this regard. In reaching that conclusion we join two other circuit courts that have addressed *Shanklin*'s impact on state-law negligence actions. In *Lee v. Burlington Northern Santa Fe Railway Co.*, 245 F.3d 1102 (9th Cir. 2001), the plaintiff, injured in a collision with a train, brought negligence claims under Montana law against the railroad premised upon failure to install adequate warning devices. The case reached a federal jury, which found that the plaintiff was more than 50% negligent, precluding recovery under Montana law. Following the district court's entry of judgment on the verdict, the Supreme Court decided *Shanklin*. On appeal the railroad cited *Shanklin*'s preemption holding as an alternative ground for affirmance. The Ninth Circuit held that *Shanklin* unequivocally preempted the plaintiff's inadequate warnings claim: "*Shanklin* makes clear that once the [FHWA] has funded a crossing improvement and warning devices are actually installed and operating, federal regulations displace state and private decisionmaking authority." *Lee*, 245 F.3d at 1106; *see also Union Pac. R.R. Co. v. Cal. Pub. Utils. Comm'n*, 346 F.3d 851, 865 (9th Cir. 2003) (*Shanklin* holds that installation of warning devices pursuant to 23 C.F.R. § 646.214(b)(3) and (4) preempts state law as to the ade-

quacy of the safety requirements). Similarly, the Third Circuit has recognized that under *Shanklin*, "a railroad's state law obligations with respect to appropriate warning requirements are superceded by federal requirements as set forth in § 646.214(b)(3) and (4)." *Strozyk v. Norfolk S. Corp.*, 358 F.3d 268, 273-74 (3d Cir. 2004). In neither of these cases did the circuit court indicate that a claim premised upon failure to adhere to the federal regulations survived the preemption analysis.

The facts of this case bring it squarely within the holding of *Shanklin*. The CR 400 crossing, where the collision occurred, was upgraded with federal funds disbursed by the FHWA pursuant to the FRSA. The warning devices were installed as mandated by 23 C.F.R. § 646.214(b)(3) and (4). Almost all the funds needed to complete the project were provided by the federal government, and in fact the government signed off on the installation of the devices once the statewide upgrade program was complete. Accordingly, to the extent the plaintiffs' claims against the defendants are premised upon the alleged inadequacy of the warning devices at the CR 400 crossing, they are preempted.

### C. Obstruction of View and Failure to Install/ Maintain Signs

The plaintiffs also challenge the dismissal of their negligence claim against the County to the extent that the district court found the evidence of obstruction of view and failure to maintain signage at the crossing insufficient to survive summary judgment. On the obstruction-of-view claim, they contend that photographic evidence of the CR 400 crossing does not clarify where the County's right-of-way terminates and the railroad's begins, creating a question of fact that precludes summary judgment. They also argue that the district court improperly premised its ruling on Sheryl Bechard's testimony that she had observed the

signs and was familiar with the crossing when the court had not yet resolved the issue of her competence to testify. Finally, as to this claim, they assert that the district court erred in holding that the County was immune under Indiana's governmental immunity statute, IND. CODE § 34-13-3-3.

A negligence claim under Indiana law requires: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a breach of that duty or, in other words, a failure on the part of the defendant to conform his conduct to the requisite standard of care; and (3) an injury to the plaintiff resulting from that breach. *Douglass v. Irvin*, 549 N.E.2d 368, 369 (Ind. 1990). The district court concluded that the summary judgment record was insufficient to create an issue of fact on the plaintiffs' claim that the view of the railroad tracks was obstructed by vegetation or that the County was negligent with respect to the presence and/or maintenance of signage at the crossing. The court noted the complete lack of evidence that vegetation obstruction was a cause of the accident, that any signs were damaged or missing, or that any alleged deterioration in the pavement markings was a cause of the accident.

Setting aside the dispute about Sheryl Bechard's competence to testify, the plaintiffs have not cited to record evidence tending to show vegetation overgrowth at the crossing or that vegetation-obstructed view was a cause of the accident. *See Justice v. CSX Transp., Inc.*, 908 F.2d 119 (7th Cir. 1990) (discussing the duty to prevent visual obstructions at railroad crossings and causation in obstruction-of-view negligence claim under Indiana law). Nor have they cited any record evidence to support their claim that the County failed to install or maintain stop signs and pavement markings, or that the absence or deterioration of this signage was a cause of the accident. To the contrary, photographs of the crossing in the record—albeit undated photographs—show visible stop signs and no vegetation ob-

structions to the view of the tracks from the road. Summary judgment on this aspect of the plaintiffs' claim against the County was appropriate.[2]

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

       Teste:

                        _____

                        *Clerk of the United States Court of Appeals for the Seventh Circuit*

---

[2] As we have noted, the district court held in the alternative that the County was immune from suit under Indiana's governmental immunity statute, IND. CODE § 34-13-3-3 (2005). Because we agree with the district court's conclusion that the plaintiffs' negligence claim against the County for obstruction of view and failure to install/maintain signage is factually insufficient to survive summary judgment, we do not address the immunity issue.