# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-1104

STEVEN B. POLLACK,

*Plaintiff-Appellant,*

v.

UNITED STATES DEPARTMENT OF DEFENSE, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 2659—**Blanche M. Manning**, *Judge.*

ARGUED SEPTEMBER 18, 2007—DECIDED OCTOBER 18, 2007

Before EVANS, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Steven Pollack, a concerned citizen and an attorney who represents himself, sued the Department of Defense, the Army, and the Navy, contending that they improperly transferred ownership of Superfund property in violation of the Comprehensive Environmental Response, Compensation, and Liability Act, or CERCLA, 42 U.S.C. § 9601 et seq. CERCLA empowers the President of the United States—who delegates his power to others—to clean up sites that are contaminated with hazardous waste. Pollack's lawsuit arises out of an ongoing effort to clean up a landfill in Waukegan, Illinois located on property that used to be a U.S. Army

base called Fort Sheridan. The district court dismissed the suit under CERCLA § 113(h), 42 U.S.C. § 9613(h), which strips courts of jurisdiction over challenges to cleanup efforts while they are underway, and Pollack appealed. Because we agree that the suit is barred by § 113(h), we affirm.

## I. BACKGROUND

The record in this case is mercifully devoid of the technical details that haunt most CERCLA litigation, so our factual recitation will be brief. After Fort Sheridan was closed in 1993, the Army transferred control of part of the base—including the landfill at issue here—to the Navy for $24 million. The Army pledged to "retain responsibility and liability for environmental restoration" of the property. Several years later, it emerged that waste from the landfill was spilling out into the air and water. Acting with the U.S. and Illinois EPAs, the Army developed an interim plan to shore things up until a permanent remedy could be found. After a public comment period, the Army implemented this plan, which included installing new drainage and collection systems, a "burn facility for gases," and a new liner and topsoil cap for the landfill.

According to Pollack, in 2002 the Army and the U.S. EPA came to an impasse over the construction of the landfill cap, with the EPA accusing the Army of failing to meet the specifications in the cap's design. Briefly, the EPA faulted the Army for using big rocks instead of small ones, contending that this would allow rainwater to enter the cap liner and compromise its ability to hold in the waste. The EPA implied in late 2003 that it could not sign off on the project, and the Army cut off its funding for EPA cooperation. Several years later, the Navy leased part of the property abutting but not including the landfill to a private developer, which will install housing for Navy

families at the former base. The lease was effective January 1, 2006. Later in 2006, after (and, Pollack contends, because of) the initiation of this lawsuit, the Army proposed a final remedial plan for the landfill, and submitted it to the Illinois EPA for review and comment. No final plan has been formally selected as of this writing.

Pollack sued to challenge the two transfers—the first, from the Army to the Navy in 1993, and the second, from the Navy to its private development partner in 2006. He contends that the transfers violated CERCLA because the U.S. EPA did not sign off on the Army's cleanup plan before the property changed hands. *See* 42 U.S.C. § 9620(h). The district court dismissed the suit and this appeal followed.

## II. ANALYSIS

The merits of Pollack's lawsuit are open to question. He contends that under CERCLA § 120(h)(3), 42 U.S.C. § 9620(h)(3), the Army and Navy were required to obtain the EPA's concurrence with the cleanup plan before they could transfer the property. But even though the first transfer of the property, in 1993, did indeed occur without the EPA's blessing, the landfill's weakness had not yet been discovered, so there was no existing cleanup plan to bless. And the second transfer did not include the landfill in question, but rather property abutting the landfill. (Pollack might still be able to show that toxins were "known to have been released" on the abutting land. *See* 42 U.S.C. § 9620(h)(1).) Moreover, the defendants note that the landfill, while subject to CERCLA, is not on the National Priorities List (NPL) of most dangerous hazardous waste sites, *id.* § 9605(a)(8)(B), and contend that they were therefore free to work only with the Illinois EPA and did not need the OK of its federal counterpart. *See id.* § 9620(a)(4).

We need not inquire further into these matters because the case begins and ends with § 113(h) of CERCLA. 42 U.S.C. § 9613(h). Section 113(h) is an exception to CERCLA's citizen suit provision, and provides as follows:

No Federal Court shall have jurisdiction under Federal law . . . to review any challenges to removal or remedial action selected under [CERCLA § 104], or to review any order issued under [CERCLA § 106], in any action except one of the following:

. . .

(4) An action under [CERCLA § 159—citizen suits] alleging that the removal or remedial action taken under [CERCLA § 104] or secured under [CERCLA § 106] was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

In other words, courts generally may not review challenges to CERCLA cleanup efforts ("removals" and "remedial actions"), but they may review such challenges when brought in citizen suits—so long as the citizen litigants wait until the cleanup is done before suing.

We have described § 113(h) as a "blunt withdrawal of federal jurisdiction." *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1244 (7th Cir. 1991). The policy behind the provision, while perhaps counterintuitive, was a considered choice made by Congress. Namely, since toxic waste dumps are a major hazard, they should be cleaned up as quickly as possible and without interruption by citizen suits, which cannot be filed until all cleanup is complete. *See Frey v. EPA*, 403 F.3d 828, 833 (7th Cir. 2005).

"Congress apparently concluded that delays caused by citizen suit challenges posed a greater risk to the public welfare than the risk of EPA error in the selection of methods of remediation." *Clinton County Comm'rs v. EPA*, 116 F.3d 1018, 1025 (3d Cir. 1997) (en banc). Congress offset the removal of pre-remedy jurisdiction by implementing detailed notice and comment procedures, by including states in the process of enforcing substandard remedies against the EPA or other responsible agencies,[1] and by leaving open the possibility of state-court nuisance actions. *Id.* But the upshot of § 113(h) is that private attorneys general must wait until a cleanup is finished before rushing to court.

Pollack contends that § 113(h), by its terms, does not apply to his lawsuit. The reasoning is technical. Two provisions of CERCLA authorize the President and his designees to initiate cleanup operations. Section 104 allows the President to undertake cleanups. 42 U.S.C. § 9604. And § 106 allows the President to command potentially responsible private parties to clean up their own hazardous messes. 42 U.S.C. § 9606. *See generally In re CMC Heartland Partners*, 966 F.2d 1143, 1145 (7th Cir. 1992); *Gen. Elec. Co. v. EPA*, 360 F.3d 188, 189-90 (D.C. Cir. 2004) (per curiam). As noted above, § 113(h) only bars challenges to removals and remedial actions that were initiated under §§ 104 or 106. But Pollack says that the cleanup effort he challenges was initiated under CERCLA § 120, which covers federally owned Superfund sites, rather than §§ 104 or 106, and hence is not affected by § 113(h).

---

[1] In cases of contaminated property owned by federal agencies, the President has delegated his CERCLA authority not to the EPA, but to the administrator of the respective agency. Exec. Order No. 12,580, 52 Fed. Reg. 2923 (Jan. 23, 1987).

He is mistaken. Section 120 was added in 1986 and provides special rules and requirements for federal Superfund sites. But it merely supplements the existing CERCLA regime by bringing federal property owners up to the same standards as private owners; it does not create a separate system for the feds. The very beginning of the section states: "All guidelines, rules, regulations, and criteria . . . shall also be applicable [to federal facilities] in the same manner and to the same extent as such guidelines, rules, regulations, and criteria are applicable to other facilities." 42 U.S.C. § 9620(a)(2). Critically, § 120 does not provide a separate grant of authority for the President to initiate cleanups of federal sites or force private parties to do so. Hence a cleanup of a federally owned contaminated site must be initiated under §§ 104 or 106, just like the cleanup of a privately owned site.

There is a wrinkle. Section 120 may create authority to clean up a certain type of federally owned property that does not include the landfill that is the subject of this lawsuit. As noted above, the nastiest sites in the country are listed on the National Priorities List (NPL) and are to be cleaned up first thing. Section 120(e) requires the administrators of federal agencies that own property on this list to perform a remediation study and then to undertake any necessary remediation. Cleanup efforts of federal NPL Superfund sites therefore arguably *are* initiated under § 120, rather than §§ 104 or 106. But there is no dispute that the landfill on the former Fort Sheridan is not on the National Priorities List, so § 120 does not provide any authority for initiating a cleanup of it. Such authority comes solely from §§ 104 and 106, and so this challenge to the Fort Sheridan cleanup remains subject to the bar set out in § 113(h).

This explains the Ninth Circuit's decision in *Fort Ord Toxics Project, Inc. v. California EPA*, 189 F.3d 828, 832-34

(9th Cir. 1999), on which Pollack relies. The court held that a cleanup of a federally owned site was indeed initiated under § 120. Since § 113(h) only blocks challenges to cleanups initiated under §§ 104 or 106, the court ruled that the plaintiff's challenge was not subject to § 113(h) and could proceed. But the court noted that the property was listed on the NPL, and cited to § 120(e)'s grant of authority for cleaning such parcels. 189 F.3d at 830. No other circuit has cited *Fort Ord*, but a district court confronting the same argument in the context of a *non-NPL* federal property—like Fort Sheridan in this case—concluded, correctly, we believe, that the cleanup was authorized by §§ 104 or 106 rather than § 120, and was therefore subject to § 113(h). *Shea Homes Ltd. v. United States*, 397 F. Supp. 2d 1194, 1202-03 (N.D. Cal. 2005). The Ninth Circuit conceded that its *Fort Ord* decision was "intuitively unappealing" and "troubling." 189 F.3d at 832. We need not agree or disagree with that court's conclusion that cleanups to federally owned sites on the NPL are initiated under § 120 and hence not subject to the bar of § 113(h) because this case does not concern an NPL property.

Pollack also contends that his suit is not subject to § 113(h) because that provision bars only "challenges to removal or remedial action," whereas his suit is a challenge to a transfer of the property. This argument is more than sophistry, but it is not, at day's end, a winner. We rejected a similar argument in *Schalk v. Reilly*, 900 F.2d 1091 (7th Cir. 1990), where we upheld the dismissal under § 113(h) of a suit claiming that the owner of contaminated property didn't consider other remedial options, allow for meaningful notice and comments, or obtain an environmental impact statement before proceeding with the cleanup plan:

> [C]hallenges to the procedure employed in selecting a remedy nevertheless impact the implementa-

tion of the remedy and result in the same delays Congress sought to avoid by passage of the statute; the statute necessarily bars these challenges. The judicial review itself slows the process down.

*Schalk*, 900 F.2d at 1097; *see also Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1072 (11th Cir. 2002) ("A suit challenges a remedial action within the meaning of 113(h) if it interferes with the implementation of a CERCLA remedy."). Pollack is challenging the procedure used to select the remedy: he argues that the transfer was improper because the EPA didn't sign off on the remedy first, and he thinks the reason the EPA didn't do so is because the remedy was a poor choice. If Pollack were to succeed, the effect—the *intended* effect—would be to invalidate the transfer and halt the ongoing remediation efforts at the landfill.

Pollack contends that barring this type of suit unjustly prevents citizens from challenging transfers of federally owned Superfund property, as CERCLA's broad citizen suit provision would otherwise allow them to do. But ruling in his favor would open up a loophole allowing citizens to attack federal Superfund cleanups indirectly by going after any transfer of property preceding those cleanups. A quick look through the complaint shows that *this* challenge to a transfer is simply a clever way to attack the chosen remedy. *See* Compl. at ¶ 5 ("The Army chose to construct a $16 million cap for the removal action even though other means could have been used on a temporary basis."), ¶ 7 ("Erosion is an unforgiving force affecting the Chicago north shore bluffs that cannot be stopped, yet the Army went forward under the assumption that the containment engineering of Landfill 6 & 7 would succeed."). Our holding that § 113(h) bars Pollack's effort merely prevents citizens from using ingenious means to skirt a clear statutory bar to suit.

## III.  CONCLUSION

We therefore AFFIRM the judgment of the district court.

A true Copy:

  Teste:

       _____
       *Clerk of the United States Court of*
       *Appeals for the Seventh Circuit*