**Donald A. SMITH, Plaintiff–Appellant,**

v.

**Thomas J. DART, et al., Defendants–Appellees.**

**No. 14–1169.**

United States Court of Appeals, Seventh Circuit.

Argued April 2, 2015.

Decided Sept. 25, 2015.

Sarah O'Rourke Schrup, Attorney, Northwestern University School of Law, Chicago, IL, for Plaintiff–Appellant.

Andrea Lynn Huff, Attorney, Chicago, IL, for Defendants–Appellees.

Before BAUER, POSNER, and MANION, Circuit Judges.

BAUER, Circuit Judge.

Plaintiff-appellant, Donald A. Smith, a pretrial detainee at the Cook County Jail, brought this *pro se* civil rights action under 42 U.S.C. § 1983, claiming that defendant-appellee, Cook County Sheriff Thomas J. Dart ("Dart"), violated his federal rights by paying him insufficient wages and subjecting him to inhumane working and living conditions. The district court dismissed Smith's work- and wage-related claims on preliminary review under 28 U.S.C. § 1915A. The court later dismissed Smith's remaining claims without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Smith filed two post-dismissal motions, each of which the district court treated as a motion for reconsideration, and each of which the district court denied. The court then dismissed Smith's case with prejudice under Federal Rule of Civil Procedure 41(b). Smith appealed. For the reasons that follow, we affirm in part and reverse in part.

## I. BACKGROUND

On July 15, 2013, Smith filed a *pro se* complaint under 42 U.S.C. § 1983 in the United States District Court for the Northern District of Illinois. Smith named Dart and two other jail officials as defendants in the caption of his complaint.[1] The complaint states that Smith, as a pretrial detainee and United States Army veteran, was placed in Division Five and enrolled in a special program that the jail offered to veterans. As a part of the veterans' program, Smith was given a job in the jail laundry. The program afforded him other benefits as well, including the opportunity to live in a special wing for veterans, apart from the general jail population, and to have his case heard in veterans' court. Smith claimed that he was paid only $3 a day for his work in the jail laundry and not the required federal minimum wage. He also claimed that he was subjected to inhumane working conditions, alleging that his job in the jail laundry required him to stand in a "hot, smelly room" from five or six o'clock in the morning until one o'clock in the afternoon. Lastly, Smith claimed that he was subjected to inhumane conditions of confinement. Specifically, he alleged insufficient food portions, the presence of rodents and insects, no mirrors, lack of outdoor recreation, and that he was forced to drink filthy water.

Pursuant to 28 U.S.C. § 1915A, the district court conducted a preliminary review of the complaint. The court summarily dismissed Smith's work- and wage-related claims. The court held that Smith had "no constitutional right to be paid for his jail job assignment at all, let alone in accordance with minimum wage laws," and that

---

1. Dart is the only one of the three named defendants who was served with process and filed an appearance in this case.

his "allegation that he has to work 7– and 8–hour days in a 'hot, smelly room' [was] insufficiently egregious to rise to the level of a constitutional violation." However, the court determined that Smith had stated colorable conditions of confinement claims.

Dart then moved to dismiss the remainder of Smith's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or alternatively, for a more definite statement under Rule 12(e). In response, Smith submitted two letters, the substance of which we set forth in our discussion below. The district court did not address Smith's first letter and treated his second letter as a motion to introduce evidence, which it denied. The court then granted Dart's motion to dismiss as uncontested and dismissed Smith's complaint without prejudice. In doing so, the court advised Smith of the deficiencies in his original pleading and instructed him to file an amended complaint.

Subsequent to the district court's dismissal order, Smith filed a "Motion Clarifying Preivously [sic] Cited Complaint About Conditions At Cook County Jail; Pluss [sic] Reconcideration [sic] of Portion of Same dismissed under The Eigth [sic] Amendment." This motion included the date on which he was first incarcerated in Division Five (December 12, 2012) and the dates that he worked in the jail laundry (January 15, 2013 to November 18, 2013). The motion also indicated that he was "transfered [sic] against his wishes" out of Division Five (and presumably the veterans' program) to Division Eleven. The district court construed this filing as a motion for clarification (which it granted) and reconsideration of the dismissal order (which it denied). The court specifically directed Smith, for a second time, to file an amended pleading and granted him additional time to do so.

Smith then submitted another filing, entitled "Amended Motion in Support of Original Complaint." In this filing, Smith claimed that he was subjected to "the previously mentioned violations of his Constitutional rights" since the date of his incarceration in Division Five. He also set forth case law and referenced newspaper articles and a Department of Justice study to support the allegations he had pleaded in his original complaint. Relevant to his conditions of confinement claims, he alleged that the water at the jail contained radioactive chemicals, "sex[,] drugs[,] and lead," and that corrections officers were fully aware of this. He reiterated that he had been transferred from Division Five to Division Eleven and further stated that he had been housed in Division Eleven for approximately one and a half months and that there had been "very little change for the better due to [the] transfer." The district court construed this filing as a second motion for reconsideration, which it denied.

Two weeks later, on January 27, 2014, the district court dismissed Smith's case with prejudice pursuant to Federal Rule of Civil Procedure 41(b). The court explained that, despite warning Smith that failure to amend his complaint would result in summary dismissal, Smith did not submit an amended complaint as instructed. This appeal followed.

## II. DISCUSSION

Smith, represented by counsel on appeal, challenges the district court's dismissal of his work- and wage-related claims under 28 U.S.C. § 1915A, as well as the court's dismissal of his conditions of confinement claims under Federal Rule of Civil Procedure 12(b)(6). We review *de novo* both a § 1915A dismissal at the screening stage and a Rule 12(b)(6) dismissal for failure to state a claim. *Lager-*

*strom v. Kingston*, 463 F.3d 621, 624 (7th Cir.2006). When reviewing a motion to dismiss, we accept all facts alleged in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Vill. of DePue v. Exxon Mobil Corp.*, 537 F.3d 775, 782 (7th Cir.2008).

To satisfy the notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must merely provide "a short and plain statement of the claim," which is sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp.*, 550 U.S. at 555, 127 S.Ct. 1955 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), including "some indication . . . of time and place," *Thomson v. Washington*, 362 F.3d 969, 970–71 (7th Cir.2004). Although detailed factual allegations ·are not required, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570, 127 S.Ct. 1955); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir.2010). In other words, a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir.2011) (internal quotation marks and citation omitted). Because *pro se* pleadings are to be held to "less stringent standards than

formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curium), we accord a liberal reading to *pro se* complaints, *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir.2011). With these general principles in mind, we turn to Smith's challenges on appeal.

**A. Conditions of Confinement**

■ At the outset, we note that Smith's constitutional rights as a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, which is applicable to convicted prisoners. *See, e.g., Kingsley v. Hendrickson*, ⸺ U.S. ⸺, 135 S.Ct. 2466, 2475, 192 L.Ed.2d 416 (2015); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir.2013). In the context of a conditions of confinement claim, a pretrial detainee is entitled to be free from conditions that amount to "punishment," *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), while a convicted prisoner is entitled to be free from conditions that constitute "cruel and unusual punishment." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In both cases, however, the alleged conditions must be objectively serious enough to amount to a constitutional deprivation, and the defendant prison official must possess a sufficiently culpable state of mind.[2] *See, e.g., Sain v. Wood*, 512 F.3d 886, 893–94 (7th Cir.2008); *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005); *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir.2003). An adverse condition

**2.** With respect to this second, subjective element, an inmate must "prove that the defendant 'possess[ed] a purposeful, a knowing, or possibly a reckless state of mind' with respect to the defendant's actions (or inaction) toward the plaintiff." *Davis v. Wessel*, 792 F.3d 793, 801 (7th Cir.2015) (quoting *Kingsley*, 135 S.Ct. at 2472). Although the parties argue this element in their briefs, it is not at issue in

this appeal. As the district court correctly noted, the personal involvement of senior jail officials, such as Dart, can be inferred at the motion to dismiss stage, where, as here, the plaintiff alleges "potentially systemic," as opposed to "clearly localized," constitutional violations. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428–29 (7th Cir.1996).

amounts to a constitutional deprivation when it results in the denial of a basic human need, *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012), such as "adequate food, clothing, shelter, and medical care," *Farmer*, 511 U.S. at 832, 114 S.Ct. 1970.

The district court dismissed Smith's conditions of confinement claims, holding that he failed to state facts indicating that the alleged conditions were sufficiently serious enough to implicate the Constitution. Smith challenges this decision on appeal. We address each of his arguments in turn.

█ Smith first contends that, in dismissing his conditions of confinement claims, the district court conflated the Fourteenth Amendment with the Eighth Amendment, and thus failed to consider whether his claims fell somewhere within the "gray area" that exists between them. First, the district court acknowledged Smith's status as a pretrial detainee and that his rights are derived from the Fourteenth Amendment. The district court also recognized the Supreme Court's holding in *Bell v. Wolfish* that due process protects pretrial detainees from being subjected to conditions of confinement that amount to punishment. The court determined, however, that Smith failed to allege facts indicating that he was subjected to such grave conditions. Second, the district court did not err by relying on Eighth Amendment cases or by failing to consider whether Smith's conditions of confinement claims fell within some "gray area" that exists between the Eighth and Fourteenth Amendments. We have held that there is little practical difference, if any, between the standards applicable to pretrial detainees and convicted inmates when it comes to conditions of confinement claims, and that such claims brought under the Fourteenth Amendment are appropriately analyzed under the Eighth Amendment test.

*See, e.g., Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir.2013) ("[T]he protection afforded under [the Due Process Clause] is functionally indistinguishable from the Eighth Amendment's protection for convicted prisoners."); *Hart v. Sheahan*, 396 F.3d 887, 892 (7th Cir.2005) ("[T]he standards applicable to complaints by convicts and by pretrial detainees about unsafe conditions of confinement merge."); *Farnham*, 394 F.3d at 478 ("[W]e have found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) without differentiation." (internal quotation marks omitted)); *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir.2000) ("[T]here is little practical difference between the two standards."). Accordingly, Smith's generalized claim of error fails.

█ Next, Smith argues that the district court erred in granting Dart's motion to dismiss as uncontested. More specifically, he claims that the district court should have considered a pair of letters that he submitted in response to Dart's motion and the additional factual allegations included therein. On this point, we agree.

The district court held a hearing and entered Dart's motion to dismiss on October 1, 2013. Smith mailed his first letter, entitled "In support of original complaint," two days later, which the district court received on October 7, 2013. This letter contains factual assertions that support and elaborate on the allegations spelled out in Smith's original complaint (it also contains a number of allegations that do not relate to his original complaint). The court received Smith's second letter, which he labeled as an "Additional Request to intraduce [sic] evidence," on October 9, 2013. This letter is not as helpful to Smith's case as the first. The district

court did not address Smith's first letter and denied his second letter, stating "[n]o proof in support of Plaintiff's claims is necessary at this time."

We have held that facts alleged by a plaintiff in a brief in opposition to a motion to dismiss "may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint." *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n. 2 (7th Cir.1997); *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir.1997) ("[W]e have held that a plaintiff may supplement the complaint with factual narration in an affidavit or brief."). Although neither of Smith's letters were formally labeled as a motion in response to Dart's motion to dismiss, the letters were filed on the heels of Dart's motion and contained additional factual assertions that added to the allegations that Smith made in his original complaint. Given the district court's obligation to construe *pro se* pleadings liberally, the court ought to have considered these letters when ruling on Dart's motion.

Dart argues that, even if the district court had considered the two letters, Smith's allegations are still insufficient to state a conditions of confinement claim. We agree with respect to some of Smith's claims, but disagree with respect to others. However, before addressing each claim in light of the additional facts contained in Smith's letters, we first identify the claims comprehended by Smith's original complaint. The relevant portion of Smith's complaint states:

> [D]aily given breakfast of 1 egg—12% milk half cup cereal small pak [sic] of Kool–Aid then lunch peanut butter sandwich and cookies with 1 pak [sic] of Kool–Aid. Pre-trial detainees are in program and conditions are foul roaches mice, cockroaches in food no mirrors even to see self shave can't go outside recreation filthy water etc.

Smith's conditions of confinement claims can thus be summarized as follows: (1) inadequate food, (2) the presence of rodents and insects, (3) no mirrors,[3] (4) lack of outdoor recreation, and (5) contaminated water. Although a plaintiff may assert additional facts in a motion to defeat dismissal, he or she cannot amend his or her complaint to state new claims in such a motion. *Am. Inter–Fid. Exch. v. Am. Re–Ins. Co.*, 17 F.3d 1018, 1021–22 (7th Cir. 1994). Therefore, we consider the factual allegations contained in Smith's letters to the extent that they are consistent with, or add to, the deprivations concomitant with the claims described above. We do not consider the letters to the extent that they raise new claims, such as invasion of privacy, understaffing, inadequate heating,[4] overcrowding, and so on.

---

3. The district court did not address Smith's claim regarding a lack of mirrors. Smith does not re-raise the issue on appeal. Therefore, it is waived.

4. We do not reject Smith's inadequate heat allegation. Rather, we do not consider that allegation because it does not relate to any of the allegations raised in his complaint, nor does it work in combination with any of the allegations in his complaint to show the deprivation of a single, identifiable basic human need. *See Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) ("[C]onditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.''). Simply stated, it is a new claim. And as such, it cannot be raised in a brief in opposition to a motion to dismiss; it must be pleaded in a new or amended complaint. *See Am. Inter–Fid. Exch.*, 17 F.3d at 1021–22. Because we ultimately end up remanding to the district court, Smith may,

### 1. Inadequate Food

 The Constitution mandates that prison officials provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985) (citation omitted). The district court dismissed Smith's inadequate food claim on the ground that his complaint did not suggest that meals served at the jail are nutritionally deficient or present a substantial danger of harm. Smith's first letter adds to this claim by alleging, among other things, that his "[f]ood is well below nutritional value." At the motion to dismiss stage, these six words make all the difference under our precedent. *See Antonelli,* 81 F.3d at 1432 (holding inmate's allegation of a "nutritionally deficient diet" sufficient to "state[ ] a claim for a violation of the Due Process Clause or the Eighth Amendment"). This claim, therefore, should not have been dismissed.

### 2. The Presence of Rodents and Insects

 Pest infestations may also form the basis of a Fourteenth or Eighth Amendment conditions of confinement claim. *Antonelli,* 81 F.3d at 1431; *see also Thomas v. Illinois,* 697 F.3d 612, 614 (7th Cir.2012). The district court determined that Smith failed to state a claim because, although he alleged that mice and cockroaches are present in the jail, he did not allege facts from which one could infer that the degree of infestation rose to the level of *constitutional concern.* Smith's first letter adds to the allegations contained in his complaint, stating, "[s]piders, rats, roaches, centerpides [sic], flys, gnats and beetles are on the tier[,] also there are nests of spiders under the radiators[,] roaches and gnats make their home in the showers and toilet area." We do not doubt that there are rodents and insects in the Cook County Jail, however, alleging the mere presence of a laundry list of pests, without more, is not sufficient to state a constitutional claim. Despite Smith's additional allegations, we are left in the dark as to how extensive the infestations are and how the pests affect him. He does not allege that pests are present in his cell, or that pests have ever come into contact with his person or his property, or that he's been bitten or stung or otherwise suffered physical or psychological harm, or that his property has been damaged. Nor does he allege how often he observes rodents and roaches on the tier, whether it's continuously or only from time to time. On all of these matters we are left to speculate. Smith's allegations are a far cry from those we examined in *Antonelli,* where the plaintiff inmate alleged "cockroaches that were everywhere, crawling on his body (along with mice) and constantly awakening him, and causing the environment to be unsanitary." 81 F.3d at 1431 (internal quotation marks omitted). His allegations also do not approach the severity of the conditions that we considered a "close case," though sufficient to state a claim, in *White v. Monohan,* 326 Fed. Appx. 385, 388 (7th Cir.2009) (unpublished) ("White claimed that for over five years the bugs, roaches, spiders, wasps, and bees had bitten and stung him so often as to leave multiple scars, wounds, and sores, causing him internal injuries." (internal

---

with leave of the court, amend his complaint if he so chooses. Given that the allegation in his letter in opposition to Dart's motion to dismiss appears to state a claim for inadequate heating, *see, e.g., Del Raine v. Williford,*

32 F.3d 1024, 1035 (7th Cir.1994), and assuming that he continues to be represented by counsel, we see no reason why Smith should be denied leave to amend.

quotation marks omitted)). Thus, even in light of Smith's two letters, his pest infestation allegations are insufficient to state a constitutional violation.

### 3. Lack of Outdoor Recreation

■■■ We have recognized that lack of exercise can rise to a constitutional violation "[w]here movement is denied and muscles are allowed to atrophy[ ] [and] the health of the individual is threatened." *French*, 777 F.2d at 1255; *Antonelli*, 81 F.3d at 1432 ("Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened."); *see also Delaney v. De-Tella*, 256 F.3d 679, 684 (7th Cir.2001); *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir.1997). As the district court noted, there is a significant difference between a lack of outdoor recreation and an inability to exercise. Smith does not allege that his movements are restricted to the point that he is unable to exercise inside his cell or in jail common areas and his letters add nothing to this claim. Accordingly, we agree with the district court that Smith's allegation that he "can[']t go outside [for] recreation" fails to state a sufficiently serious constitutional deprivation.

### 4. Contaminated Water

■■■ Just as correctional officers cannot deprive inmates of nutritional food, they cannot deprive inmates of drinkable water. *Atkins*, 631 F.3d at 830. The district court dismissed Smith's contaminated water claim on the ground that he alleged no facts from which one could infer that the jail's water is unsafe to drink. In his first letter, Smith further alleges with respect to this claim that "the [correctional officers] do not drink the water yet we have to and it is a known fact that the water in the jail is polluted and contains

high levels of alpha + beta radiation also cyanide and lead." Certainly, the presence of contaminants such as cyanide and lead may render water unsafe to drink. Thus, accepting Smith's allegations as true, as we must at this stage, we cannot say Smith's allegations of contaminated water fail to state a claim upon which relief can be granted.

Lastly, Smith argues that the district court should have considered his two post-dismissal filings as amended complaints, as opposed to motions for reconsideration. These two filings, however, do not contain allegations that remedy the aforementioned deficiencies from which Smith's pest infestation and lack of outdoor recreation claims suffer. Given that we have already held that Smith may proceed on his inadequate food and contaminated water claims, even if we were to conclude that the district court erred in the respect he suggest, the outcome of this appeal would remain the same. This point, therefore, requires no further discussion.

### B. Smith's Work- and Wage–Related Claims

As recounted previously, Smith claimed in his complaint that he was entitled to be paid in accordance with federal minimum wage laws for his work in the jail laundry room. He also claimed that his working conditions, which caused him to stand seven to eight hours a day in a "hot, smelly room," were unconstitutional. The district court dismissed both claims summarily on preliminary review.

On appeal, Smith first argues that he stated a valid claim under the Fair Labor Standards Act ("FLSA") based on his $3 per day, sub-minimum wage pay. He also argues that the conditions that he was "compelled to work under" violate the Thirteenth and Fourteenth Amendments.

We find neither of these arguments persuasive.

■ The FLSA is intended for the protection of employees, *Bennett v. Frank*, 395 F.3d 409, 409 (7th Cir.2005), and applies to all employers in the free market, whether private or public, *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 555–56, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). In *Bennett*, we held that prisoners are not protected by the FLSA because they are not employees of their prison. 395 F.3d at 409. We explained:

> [P]eople are not imprisoned for the purpose of enabling them to earn a living. The prison pays for their keep. If it puts them to work, it is to offset some of the cost of keeping them, or to keep them out of mischief, or to ease their transition to the world outside, or to equip them with skills and habits that will make them less likely to return to crime outside. None of these goals is compatible with federal regulation of their wages and hours. The reason the FLSA contains no express exception for prisoners is probably that the idea was too outlandish to occur to anyone when the legislation was under consideration by Congress.

*Id.* at 410.

■ In *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir.2008), we held that civil detainees are not covered by the FLSA, since *Bennett's* reasoning applies equally to this class of persons as it does to prisoners. We further noted that the minimum wage is not needed to protect civil detainees' well-being and standard of living because, like prisoners, civil detainees have their basic human needs provided for by the state. *Id.* We cannot see what difference it makes if the incarcerated person is a prisoner, civil detainee, or pretrial detainee. In all cases, the aforementioned principles apply equally. Thus, like prisoners and civil detainees, pretrial detainees are not protected by the FLSA because they are not employees of their prison.

Smith argues that he should fall within the ambit of the FLSA because the Cook County Jail is not satisfying his basic needs and he requires the minimum wage to satisfy these needs. True, we did hold above that Smith stated a claim for inadequate food and contaminated water. However, this does not mean that he is entitled to minimum wage. It is the jail's constitutional obligation to provide Smith with his basic needs, including adequate food and drinkable water. When the jail fails to do so, it is that failure that must be remedied (the Constitution demands it); it does not entitle him to receive minimum wage under the FLSA.

Smith's Thirteenth and Fourteenth Amendments claims require little discussion. The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. As discussed in the previous section, the Due Process Clause protects pretrial detainees from being subjected to conditions of confinement that amount to punishment. *Bell v. Wolfish*, 441 U.S. at 535, 99 S.Ct. 1861.

■ The glaring problem with Smith's arguments is that he chose on his own volition to participate in the veterans' program and avail himself of its benefits, including the ability to work and earn wages. In other words, his "servitude" was not involuntary, nor can it be considered punishment. Perhaps recognizing this flaw, Smith argues that he felt compelled to work because, if he refused, he would lose

other special privileges that he received as a participant in the veterans' program, such as being housed apart from the general population and having his case heard in veterans' court. Smith did not have a right to these special privileges, however, and therefore the loss of these privileges does not constitute punishment in the constitutional sense.

## III. CONCLUSION

In conclusion, we REVERSE the district court's decision with respect to Smith's inadequate food and contaminated water claims and REMAND for further proceedings on those claims. The remainder of the district court's decision is AFFIRMED.

POSNER, Circuit Judge, concurring and dissenting.

The plaintiff claims that while detained in Cook County Jail awaiting trial he has been subjected to intolerable living conditions, violative of his constitutional rights. As a pretrial detainee, proceeding therefore under the due process clause of the Fourteenth Amendment rather than under the cruel and unusual punishment clause of the Eighth Amendment, he is entitled to be free from conditions that amount to "punishment." *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). One of those conditions is "denial of a basic human need," *Rice ex rel. Rice v. Correctional Medical Services,* 675 F.3d 650, 664 (7th Cir.2012), such as "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The denial of such conditions is particularly egregious when one is dealing with pretrial detainees, for they have not been convicted of a crime. (The plaintiff also claims to be underpaid for his work in the jail laundry, but the rejection of that claim in the ma-

jority opinion is correct for the reasons given in the opinion.)

His complaint, as supplemented in response to the jail's motion to dismiss (which I'll come to shortly), alleged that insects infest his cell and common areas, that he's found cockroaches and mice in his food, that the drinking water in his cell is contaminated and toxic, that his cell is inadequately heated during the winter, that he isn't allowed to go outside for recreation or exercise, and that the meals the jail gives him are nutritionally inadequate—breakfast is a single egg with a half cup of cereal with milk and a small packet of Kool–Aid, lunch a peanut butter sandwich and some cookies (he doesn't mention supper). Although theoretically he could supplement his diet at the commissary, he alleges that the commissary's prices are prohibitive.

These are just allegations. They may be groundless. But I don't understand the district court's deciding to dismiss the complaint in its entirety, and with prejudice, for failure to state a claim.

The jail had filed a motion to dismiss on that ground and, in the alternative, a motion for a more definite statement of the plaintiff's claim. The motions contended that he had failed to "provide sufficient enough [*sic*—"sufficient" and "enough" are synonyms] allegations to put the Defendant on notice of his claims," that his claims lacked "factual content that allows the court to [infer] that the defendant [Cook County Sheriff Thomas Dart, the administrator of the jail] is liable for the misconduct alleged," and that he had failed to allege "when he was housed in Division 5, for how long, and whether the conditions changed." (The jail does not dispute, however, that the Sheriff is the proper defendant if the plaintiff's constitutional rights have been violated.)

The plaintiff responded in a pair of letters, filed with the court, which explained when he had been assigned to Division 5 and how long he had been there (ten months), and also elaborated on the facts alleged in his complaint. Nevertheless the district judge granted the jail's motion to dismiss, though with leave for the plaintiff to file an amended complaint. The judge called the jail's motion "uncontested," saying that the plaintiff, though she had granted him "the opportunity to file an opposing brief," had failed to do so. She added that "even accepting Plaintiff's factual allegations as true, the Court finds that the complaint fails to give Defendants sufficient notice of the claims against them. Plaintiff must elaborate on his claims; the facts alleged are inadequate to satisfy even basic pleading requirements."

Yet in response to the jail's motion to dismiss or for a more definite statement, he *had* pleaded additional facts that cured the pleading deficiencies alleged by the jail. The judge appears to have overlooked the filings containing the additional allegations when she said for example that "the complaint states that there are mice and cockroaches, but [the plaintiff] offers no basis for concluding that the degree of infestation is such as to create a constitutional claim." This terse turn-down gave the plaintiff no clue of what he had to allege, regarding his having to share his cell with mice and cockroaches, in order to plead a constitutional violation. I don't understand the judge's remark in granting the jail's motion to dismiss that "the amended complaint must include dates.... Plaintiff must provide a time frame for the conditions about which he complains.... Punishment generally requires allegations of extreme deprivations over an extended period of time." He had already stated, in a filing that the district judge may well have overlooked because it wasn't labeled an amended complaint, that

he'd been in his infested cell for 10 months. To state a claim that would survive a motion to dismiss, the plaintiff wasn't required to have kept a calendar, marking on it every day that a mouse or cockroach appeared in his food or scurried across the floor of his cell.

Instead of filing a document labeled "amended complaint," the plaintiff filed a "Motion Clarifying Pre[vi]ously Cited Complaint About Conditions at Cook County Jail; Plus[ ] Recon[s]ideration of Portion of Same Dismissed Under the Eig[h]th Amendment." The judge treated this as a request for clarification of her order dismissing the complaint, and she offered by way of clarification that "if Plaintiff wishes to pursue his claims, he must state facts indicating that the food served at the jail is nutritionally inadequate or presents a substantial danger of harm, that the jail's water is unsafe to drink, that pest infestation is so profound as to rise to the level of a constitutional violation, and that the denial of exercise is extreme and prolonged." This order evoked from the plaintiff an "Amended Motion in Support of Original Complaint," which elaborated on his allegation that the jail's water was unsafe to drink but not on his other allegations. The district judge then *dismissed his suit with prejudice* on the ground that he had failed to file an amended complaint. This appeal followed.

The majority opinion upholds some of his claims, rejects others, and for the most part I agree with its rulings. But not with respect to the alleged infestation of his cell by mice and cockroaches, and the inadequate heating of his cell (although footnote 4 of the majority opinion leaves some room for him to renew the heating complaint on remand). The district judge directed this pro se plaintiff to file an amended complaint specifying whether the infestation of his cell by mice and cockroaches was "so

profound as to rise to the level of a constitutional violation." How could a pro se jail detainee be expected to answer such a question? He had alleged that the mice and cockroaches were in his food and that he developed scabies—a highly contagious skin infestation, productive of severe itching, and sometimes referred to as "the seven-year itch"—from the unsanitary conditions. What more should be required to state a claim of punishment? That he keep a record of the number of his meals that he shared with the vermin? He alleged that his cell was inadequately heated during the winter; again, what more should he have been required to allege—does the jail give him a thermometer and a calendar, so that he can keep a written record of the temperature in his cell day by day to submit to a judge?

Smith responded to the defendants' request for more information about the pest and heating allegations. That should have been enough to convince the district court to deny the motion to dismiss. The jail's counsel would then have deposed the plaintiff and maybe other inmates and also jail employees and on the basis of the testimony elicited in those depositions might have moved successfully for summary judgment. Because the district judge terminated the case prematurely, no one will ever know whether the plaintiff's rejected claims concerning pest infestation and (subject to the qualification in footnote 4) inadequate heating are indeed meritless.