**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 1, 2018[*]
Decided February 2, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-1561

| | |
|---|---|
| FIRAS M. AYOUBI, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 13 C 8983 |
| THOMAS J. DART, et al., | Charles R. Norgle, |
| *Defendants-Appellees*. | *Judge*. |

## O R D E R

Firas Ayoubi sued Cook County jail officials and medical providers under 42 U.S.C. § 1983, claiming that they violated his due process rights by inadequately quarantining inmates who, he says, gave him influenza. After discovery, the district court granted the defendants' summary judgment motion. Because Ayoubi did not produce evidence from which a reasonable jury could conclude that any defendant was deliberately indifferent to any serious health risks that he faced, we affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

For purposes of this appeal, we rely only on the evidence in the summary judgment record, viewed in the light most favorable to Ayoubi as the non-movant. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017). Cermak Health Services provides medical care to detainees of the Cook County Department of Corrections. Cermak's disease-containment policy prescribes special measures for so-called "isolation patients" and "quarantine patients." Neither type of patient has necessarily been diagnosed with a particular illness; rather, an isolation patient has shown signs or symptoms of an "influenza-like illness," while a quarantine patient has shown no symptoms but nonetheless has recently been the cellmate of a symptomatic detainee.

When feasible, the policy requires isolation patients to be housed in predesignated isolation cells. When there is a shortage of these cells, general population cells may be designated as temporary isolation cells. The same goes for quarantine cells. Isolation patients may share a cell only with other isolation patients; quarantine patients, only with other quarantine patients. Still, the policy permits these patients and general population detainees alike to use a shared dayroom, albeit not at the same time. Patients are advised to wear surgical masks in the dayroom.

At all times relevant to this appeal Ayoubi was a pretrial detainee in the Cook County Jail. (He is now a prisoner at Pinckneyville Correctional Center.) While Ayoubi was housed on the first floor of what the parties call Division 5, Tier 2A of the jail, five cells on the second floor of that tier were designated as either quarantine or isolation cells—two quarantine and three isolation. From December 27, 2012, until January 2, 2013 (about a week), between three and six patients were assigned to those second-floor cells. Ayoubi testified in a deposition that he saw the patients coughing, but he does not provide any other evidence of their symptoms.

The closest Ayoubi said he came to interacting with these patients was watching them through the uncovered "chuckhole" in the solid steel door to his cell. He testified that he saw, from within his cell, various patients not wearing masks over their mouths while using the shared dayroom phone, and that he did not see anyone clean the dayroom and its objects with sanitizing wipes after patient use.

Ayoubi claims that the patients' presence led him to develop flu-like symptoms sometime in early January 2013, though he received no diagnosis. He testified that these symptoms included a persistent and painful cough, dizziness, immobility, and a fever

with chills and sweating; he says he recovered in roughly two weeks. He does not claim that he was denied treatment after the symptoms' onset.

The theory of Ayoubi's § 1983 suit is that Cook County jail officials and Cermak employees violated due process by displaying deliberate indifference to a substantial risk that temporarily housing patients near him (and letting them use the dayroom) would make him seriously ill. Under the supplemental jurisdiction furnished by 28 U.S.C. § 1367, he added state-law claims for negligence. As defendants he named Cook County and six other people (each in both a personal and an official capacity): (1) Thomas Dart, the Sheriff of Cook County; (2) John Murphy, Acting Executive Director of the Cook County Department of Corrections; (3) Tyrone Everhart, Superintendent of Division 5 at the jail; (4) Erica Queen, the jail's Superintendent of Records and Receiving; (5) Connie Mennella, who was then the Interim Medical Director for Cermak; and (6) Marghoob Khan, an attending physician in Division 5. Ayoubi had not spoken to any defendant; he based his claims against them solely on their job titles and duties within the Department of Corrections.

During discovery, Ayoubi filed several motions to compel, asserting generally that the defendants were being evasive in their responses to his discovery requests. The district court denied each without prejudice and, noting that his requests were largely overbroad, asked Ayoubi to specify which requests he thought were not being honored.

Based on affidavits, Ayoubi's deposition testimony, and various jail records, the defendants moved for summary judgment. Ayoubi asked for more time to complete discovery, but the district court denied this request, explaining that Ayoubi had failed to comply with its instruction to highlight specifically what kinds of information he believed additional discovery might yield. The district court concluded that Ayoubi's symptoms were insufficiently serious for liability under the Fourteenth Amendment, and thus that all his constitutional claims failed as a matter of law. With the federal claims denied, the court declined to exercise supplemental jurisdiction over any state-law claim.

Ayoubi mainly disputes on appeal the resolution of his constitutional claims. To resolve this dispute, we need not opine on whether influenza is a serious condition in the abstract, whether Ayoubi or any other patient really had influenza, or whether Ayoubi's symptoms were actually and proximately caused by the quarantine policies he challenges here. Nor do we need to resolve the parties' background disagreement about whether Ayoubi exhausted his administrative remedies under 42 U.S.C. § 1997e(a); in

the district court, the defendants did not demand a hearing on that topic under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), and there is no need to reach that issue when the grant of summary judgment was otherwise proper.

Because Ayoubi was a pretrial detainee, his claims involve the Fourteenth Amendment's guarantee of due process rather than the Eighth Amendment's right to be free from cruel and unusual punishment. *See Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015). But there is "little practical difference, if any" between those standards. *Id.* Under either standard Ayoubi bore the burden of providing evidence from which a reasonable jury could infer that a defendant was deliberately indifferent to a serious risk at the jail. *See Estate of Simpson*, 863 F.3d at 745. On the official capacity claims against Cook County and the other defendants, he was required to identify evidence from which a reasonable juror could conclude that the jail's policies caused a constitutional deprivation. *See Katz-Crank v. Haskett*, 843 F.3d 641, 646–47 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 2127 (2017). Though the Supreme Court has said that state officials may not ignore a condition of confinement that is sure to cause "serious illness and needless suffering," *Helling v. McKinney*, 509 U.S. 25, 33 (1993), mere negligence in managing a health or safety crisis does not add up to "deliberate indifference" in violation of the constitution. Instead, deliberate indifference means actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it. *Farmer v. Brennan*, 511 U.S. 825, 837, 844-45 (1994).

Ayoubi contends primarily that the district court erred in concluding that, as a matter of law, the flu-like symptoms he described were not "serious." But even if that determination were error, we would affirm on alternative grounds. *See Locke v. Haessig*, 788 F.3d 662, 666 (7th Cir. 2015) ("We can affirm on any ground supported by the record so long as the issue was raised and the non-moving party had a fair opportunity to contest the issue in the district court."). Critically, Ayoubi failed to present evidence from which a reasonable jury could find that any defendant was deliberately indifferent to a substantial risk that he would become seriously ill.

The Division 5 Commander (who is not a defendant) explained in an affidavit that housing decisions for both isolation patients and quarantine patients were generally made on the advice of Cermak doctors and nurses. Dr. Mennella, in turn, attested that Cermak employees recommended placements based on patients' individual clinical conditions. Beyond the broad category of "flu-like symptoms," there is no evidence that any defendant was personally aware that any isolation patient housed near Ayoubi had presented a frightening diagnosis, grave effects of sickness, or

an unusually high risk of contagion. Without any specific evidence of the patients' symptoms or diagnoses beyond some coughing, a reasonable factfinder could not conclude that no minimally competent doctor would have recommended that they be housed temporarily in Tier 2A. *See McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). And any jail official who placed the patients in Tier 2A was entitled to rely on the expertise of the medical professionals who had judged that placement to be reasonably safe. *See id.* at 483.

Further, Ayoubi has not pointed to evidence from which reasonable jurors could infer that any policy-making defendant was deliberately indifferent to a substantial risk of serious disease transmission in the jail. The constitution does not guarantee "foolproof protection from infection," *Forbes v. Edgar*, 112 F.3d 262, 266–67 (7th. Cir. 1997), and here the procedures surrounding isolation patients and quarantine patients show that jail officials and medical providers were trying actively to manage the risks posed by detainees with flu-like symptoms. The mere possibility of a better or more thorough policy is insufficient to prove deliberate indifference. *See Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir. 2000).

Ayoubi next contends that he was denied adequate discovery before summary judgment. We review a district court's denial of a discovery request for an abuse of discretion. *See Spierer v. Rossman*, 798 F.3d 502, 506 (7th Cir. 2015). To be sure, Ayoubi filed several motions to compel and, in response to defendants' summary judgment motion, sought more time to develop the record under Federal Rule of Civil Procedure 56(d). But with one exception discussed below, these requests amounted to broad assertions that the defendants generally were not complying with the discovery rules. When the district court told Ayoubi repeatedly to support his motions by highlighting specific requests or questions to which he believed defendants had not responded adequately, he demurred. The district court did not abuse its discretion in granting summary judgment over Ayoubi's vague requests for "more" discovery. *See Spierer*, 798 F.3d at 507.

On one discovery issue, however, Ayoubi was specific with the district court: the defendants' failure to produce some Tier 2A "sanitation logs," which he said would show that no one was disinfecting the dayroom and its contents after the patients used it. But Ayoubi has not shown that this omission caused him actual and substantial prejudice. *See Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir.), *cert. denied*, 137 S. Ct. 398 (2016). Even if the room were not fully disinfected after patient use, that fact would not

establish deliberate indifference—at least absent signs that the isolation patients were affected by an obvious outbreak of an especially virulent and dangerous sickness.

As for his state-law claims, Ayoubi insists that he should prevail on the merits. But he gives no reason to question the district court's relinquishment of supplemental jurisdiction over those claims if his federal-law theories failed, and we see none.

We have considered Ayoubi's other arguments and none merits discussion.

Finally in light of the foregoing, Ayoubi's motion to extend time to file a reply brief or for recruitment of counsel on appeal is DENIED. *See Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc).

AFFIRMED.