**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2022[*]
Decided June 24, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-2015

| | |
|---|---|
| DANTE R. VOSS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 19-cv-790-jdp |
| KEVIN A. CARR, *Defendant-Appellee*. | James D. Peterson, *Judge*. |

**O R D E R**

Dante Voss is a Wisconsin prisoner who relies on litigation loans from the Department of Corrections to subsidize his various lawsuits. A Wisconsin law authorized him to receive up to $100 per year, but a (now-repealed) Department policy set a $50 yearly cap for prisoners like Voss who had not repaid loans from prior years.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

He sued the Department under 42 U.S.C. § 1983, arguing that the limit, and other prison policies, violated his constitutional rights of meaningful access to the courts and equal protection (because the policy allots him less yearly funding than other prisoners). The district judge screened Voss's amended complaint and dismissed it for failure to state a claim. *See* 28 U.S.C. § 1915A. Voss appeals, but his allegations do not state a claim, so we affirm.

We accept the well-pleaded allegations in Voss's amended complaint as true and draw reasonable inferences in his favor. *See Smith v. Dart*, 803 F.3d 304, 308–09 (7th Cir. 2015). Voss relies on litigation loans to afford the costs of copying, printing, and mailing litigation materials. But he was not advanced the full $100 allowed by statute, WIS. STAT. § 301.328(1m), until he repaid all prior loans, *see* DAI Policy # 309.51.01(III)(D) (effective Jan. 1, 2013). Despite the policy's 14 exceptions, *see id.*, Voss asserted that the limitation inhibited his meaningful access to the courts.

Voss also alleged that the prison unreasonably curtailed his time—previously "unlimited"—in the prison law library. *See* DAI Policy # 309.15.01. He did not say how much time he received or how much time he required—though he now says four-hour blocks of time were needed—but he alleged generally that he did not have sufficient time to do legal research for his eight pending cases and consequently was assessed a "strike" for bringing this lawsuit. 28 U.S.C. § 1915(g).

On one occasion, prison staff opened some of Voss's legal mail and mail that contained his daughter's medical records outside his presence. When he tried to identify the staff members using Wisconsin's open-records law, *see* WIS. STAT. § 19.35, prison officials denied his request based on an exception that prevents prisoners from obtaining the personally identifying information of corrections officials, *see id.* § 19.35(1)(am)(2)(c). This prevented him from timely serving the Wisconsin Attorney General with notice of a tort claim against the officers who opened the mail, *see id.* § 893.82(3), and therefore the state courts dismissed his tort suits against them.

Finally, Voss complained that the legal loan policy and the requirement to serve a notice of claim by certified mail, *see* WIS. STAT. § 893.82(5), violate the Equal Protection Clause of the Fourteenth Amendment as applied to him because he could not afford certified mail without a larger loan. He also argued that the prisoner exception to Wisconsin's public records law unlawfully discriminates against prisoners.

In a detailed order, the judge screened and dismissed Voss's complaint. Voss's First Amendment challenge to the loan policy failed because he had no constitutional

entitlement to a subsidy for elective civil suits, so receiving less than the yearly maximum was not a constitutional injury. And Voss did not explain why $50 was insufficient to pursue his most important lawsuits. Voss's challenge to the notice-of-tort-claim statute failed because he obtained the officers' names by other means, and his inability to afford certified mail meant that he could not have sued anyway. As for the library policy, Voss did not say how much time he received or needed, he was not entitled to infinite library time, and he did not identify any injury.

The judge ruled that Voss's equal-protection challenges failed as well. The certified-mail requirement, at most, disparately impacts the poor, which does not violate the Equal Protection Clause. And the legal loan policy *favors* indigent prisoners, the only class eligible. Finally, the prisoner exception to Wisconsin's open-records law does not violate equal protection because Wisconsin had a rational basis to believe that prisoners are more likely to abuse that law. Voss moved for reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure, but the judge denied the motion.

Voss appeals the dismissal, and we begin by noting that our jurisdiction is secure. Voss's notice of appeal was posted on the district court's docket on June 15, 2020, two months after the 30-day deadline of April 13, 2020. *See* FED. R. CIV. P. 6(a)(1)(C). But Voss submitted a declaration that he gave the notice of appeal to prison officials for mailing on April 13, 2020 (the same date of his Rule 60(b) motion, which arrived promptly). Although the Department doubts that the document took two months to arrive, it concedes that Voss's notice of appeal is timely under the prison mailbox rule. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); FED. R. APP. P. 4(c). We agree that the timeline is odd, but there is no evidence that refutes Voss's sworn statement that he timely delivered his notice of appeal to prison authorities for mailing.

We turn to our de novo review of the dismissal, beginning with Voss's argument that he stated a claim that the legal loan policy—specifically the $50 cap—deprives him of meaningful access to the courts. *Lewis v. Casey*, 518 U.S. 343, 354–55 (1996). To state a claim, he had to allege that the policy impeded his access and that he was injured by being shut out of court. *In re Maxy*, 674 F.3d 658, 661 (7th Cir. 2012).

Voss fell short of pleading a First Amendment violation. No prisoner has a "constitutional entitlement to subsidy." *Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002). It follows that, whatever funding Wisconsin chooses to make available, Voss does not have a right to unlimited funds to prosecute as many civil suits as he wishes despite a lack of means. *See Johnson v. Foster*, 786 F.3d 501, 506–07 (7th Cir. 2015). His narrower argument that he seeks only the $100 permitted by statute does not advance his cause.

Neither the Constitution nor any precedent sets a dollar amount for "meaningful access." Voss has not given us any reason to believe that the $100 statutory cap, or the Department's conditional cap of $50, interfered with any non-frivolous legal claims. Indeed, as the district judge pointed out, Voss never explains why $50 per year is insufficient to cover the loan-eligible costs of his most important lawsuits. Like any other litigant, he "must decide which of his legal actions is important enough to fund." *Lindell v. McCallum*, 352 F.3d 1107, 1111 (7th Cir. 2003).

Because Voss did not show that loan policy deprived him of "meaningful access," we need not wade through the many lawsuits he brought or contemplated bringing for evidence that he was prejudiced. S*ee Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013). Nor do we need to decide if Wisconsin has any obligation to provide Voss with resources to bring state tort suits, rather than to challenge his conviction, sentence, or conditions of confinement. *See Lewis*, 518 U.S. at 355.

Voss also argues that the loan policy violates the Equal Protection Clause of the Fourteenth Amendment. He says that, as a "class of one," he receives less litigation funding—just $50 in loans—than other prisoners, who receive up to $100, without a rational basis. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). His argument rests on the faulty premise that the statute provides for $100 without restriction. But even debtless prisoners are not guaranteed $100 in annual litigation loans: "No prisoner may receive *more than* $100 annually in litigation loans." WIS. STAT. § 301.328(1m) (emphasis added). Further, the policy lowering the available funding to prisoners who have not paid back earlier loans is generally applicable and there is no allegation of selective enforcement. So, his discrimination claim is a non-starter. *See Engquist*, 553 U.S. at 601; *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Voss next reprises the argument that an alleged restriction on his library time unconstitutionally hindered his access to the courts; he contends that, with four-hour periods in the library, he would have discovered additional arguments in his many state lawsuits. His complaint makes clear that he considers the (still-unspecified) time he received was unreasonable "in relation to the number of open cases" he was pursuing. But ensuring that prisoners have meaningful access to the courts does not require prison officials to allocate library time based on the number of cases a prisoner files. *See Lewis*, 518 U.S. at 351. Only policies that end up inhibiting non-frivolous claims can violate the First Amendment. *Id.* at 353. Even if Voss did not have enough time to perform legal research for each of his eight cases at once, that is a "perfectly constitutional" consequence of his imprisonment. *See id.* at 355.

Voss's equal-protection challenge to the prisoner exception to Wisconsin's open-records law, *see* WIS. STAT. §§ 19.32(1c), .35(1), also fails. Voss does not explain what equal-protection interest he believes is at stake, and none is apparent because prisoners are not a suspect class. *See United States v. Hook*, 471 F.3d 766, 774 (7th Cir. 2006). Instead, he argues that preventing him from discovering the names of staff members who allegedly opened his legal mail outside his presence is "fundamentally unfair" because it precludes him from meeting a strict requirement to sue them. *See Badger Cath., Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010); WIS. STAT. § 893.82(2m), (3). But the law is rationally related to Wisconsin's legitimate interest in preventing prisoners from abusing the open-records law to harass or intimidate public officials. Regardless, Voss admits that he somehow got the names of mailroom staff, likely through the grievance system. *See* WIS. ADMIN. CODE § DOC 310.06(1) ("An inmate may use [the grievance process] to raise issues regarding … employee actions that affect the inmate … .").

Finally, Voss argues that 28 U.S.C. § 1915(g) is unconstitutional because he was assessed a "strike" under 28 U.S.C. § 1915A for initiating this lawsuit that failed to state a claim. He argues that § 1915(g) inhibits his right to petition the government for redress of grievances by preventing him from bringing lawsuits without prepaying filing fees. But this challenge is premature because he has not accrued three strikes, so § 1915(g) has not yet impeded any litigation. *See Lucien v. Jockisch*, 133 F.3d 464, 468–69 (7th Cir. 1998). For clarity, we note that he incurs another strike in this appeal. *See Hill v. Madison Cnty.*, 983 F.3d 904, 906–07 (7th Cir. 2020).

We have considered Voss's remaining arguments, but they are without merit.

AFFIRMED